JOHN W. HUBER, United States Attorney (#7226)
VICTORIA K. MCFARLAND, Special Assistant United States Attorney (#14411)
Attorneys for the United States of America
Office of the United States Attorney
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111-2176
Telephone: (801) 524-5682

FILED IN UNITED STATES DISTRICT
COURT, DISTRICT OF UTAH

APR 25 2018

BY D. MARK JONES, CLERK
DEPUTY CLERK

SEALED

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF:<br><br>United States Department of Agriculture Forest Service Regional Office 324 25th Street, 3rd Floor Ogden, Utah 84401 | **AFFIDAVIT IN SUPPORT OF SEARCH WARRANT**<br><br>Case No. 2:18mj236 BCW<br><br>Magistrate Evelyn J. Furse<br>BROOKE C. WELLS |

I, Kevin Watts, being first duly sworn upon oath, depose and state as follows:

1.      I am a Special Agent with the United States Department of Agriculture, Office of the Inspector General, Office of Investigations (USDA-OIG). I have been employed as an agent from September 2009 to present. I am currently assigned to the Lakewood, Colorado sub-office.

2.      As a Special Agent with USDA-OIG, I received extensive training in criminal investigations at the Federal Law Enforcement Training Center (Criminal Investigator Training Program), as well as training in the investigation of financial and electronic "cyber" crimes at the Inspector General Academy, located in Glynco, Georgia. In addition, I have completed a wide range of financial fraud seminars and courses. I

1

regularly consult with federal, state and local prosecutors, and other law enforcement professionals, to improve my investigative and legal skills.

3.      As part of my duties, I investigate offenses involving fraud and related activity in connection with USDA programs and have participated in numerous investigations, to include cases involving fraudulent criminal activity related to the USDA-programs.  My regular assignments have included surveillance, subpoena service, locating and interviewing witnesses/subjects, undercover operations, obtaining search and arrest warrants, serving as lead agent on search/arrest warrant operations, analyzing electronic data obtained during the course of the investigation (in conjunction with the OIG-Technical Crimes Division), as well as pre/post-indictment and criminal complaint case preparation.  I have been the case agent on large scale, joint investigations with the Federal Bureau of Investigation, United States Secret Service, Oakland Police Department and the San Francisco Police Department.  Additionally, I have been the affiant on over 30 arrest and search warrants, to include search warrants on physical locations and search warrants for electronic data from Internet Service Providers and I am a National Technical Investigators' Association (NATIA) Certified Technical Investigator.

4.      Prior to serving as a Special Agent with the USAD-OIG, I completed the Land Management for Police Training (LMPT) Course at the Federal Law Enforcement Training Center (FLETC) and served as a federal law enforcement officer with the United States Fish and Wildlife Service (USFWS).

5.      The statements contained in this affidavit are based on my own

2

investigative efforts and information provided to me by the General Services

Administration, Office of Inspector General (GSA-OIG), USDA Forest Service (USDA-

FS), USDA-FS Office of Law Enforcement and Investigations (LEI), and other law

enforcement officers. This affidavit is intended to show only that there is sufficient

probable cause for the requested search warrant and does not set forth all of my

knowledge about this matter.


## STATUTORY AUTHORITY

6.      This investigation concerns potential violations of the following statute:

- 18 U.S.C. § 641 – Theft of Government Property
- 18 U.S.C. § 1341 – Mail Fraud
- 18 U.S.C. § 1343 – Wire Fraud
- 18 U.S.C. § 371 – Conspiracy


## UNITED STATES DEPARTMENT OF AGRICULTURE FOREST SERVICE FLEET MANAGEMENT

7.      USDA-FOREST SERVICE (FS) is a multi-faceted agency that manages

and protects 154 national forests and 20 grasslands in 43 states and Puerto Rico. The

USDA FS-Fleet Management Division supports USDA-FS programs by providing

efficient and safe fleet equipment and ensuring the economical acquisition, operation,

maintenance, and disposal of that equipment. The fleet includes a full spectrum of

vehicles: sedans and station wagons; light, medium, and heavy trucks; construction

equipment; boats, snowmobiles, motorcycles, and trailers; and equipment for fire-

fighting, law enforcement, agriculture, and other special needs. The USDA-FS Region 4

Regional Office (R4-RO) is located at 324 25th Street, Ogden, Utah 84401, and provides

support services to USDA-FS fleet operations in Utah, Wyoming, Idaho, and California.

The R4-RO fleet is overseen by Kelly Watson, Fleet Manager; ROBERT ALEXANDER,

Assistant Fleet Manager; and Karen Knight, Budget Analyst.

## INVESTIGATION

8.      On February 26, 2018, I was contacted by James Sandall, Fleet Manager,

Rocky Mountain Research Station, USDA-FS, Ogden, Utah. Sandall's duties include the

oversight of a GSA-leased storage facility, located at 3150 Wall Avenue, Ogden, Utah

84401. Sandall assists the R4-RO fleet by allowing them to temporarily store vehicles

and equipment when needed. Sandall indicated that on December 5, 2017, he received an

unexpected electronic notification from the GSA auction website. The notification

indicated Sandall had been listed as the point of contact (POC) for an upcoming GSA

government vehicle auction. According to the notification, the GSA auction was

scheduled to begin on December 7, 2017. Sandall did not recall listing any vehicles for

auction and planned to contact GSA about the notification. Shortly after receiving the

message, Sandall was contacted by ALEXANDER. ALEXANDER told Sandall that he

had recently contacted Ernest Beatty, Equipment Disposal Specialist, GSA, Lakewood,

Colorado, and initiated a GSA auction on an R4-RO vehicle. The vehicle, a Dodge Ram

pickup, was being stored at Sandall's facility. [Agent's Note: Additional inquiries

revealed that the vehicle was a white 2012 Dodge Ram 2500 pickup, Vehicle

4

Identification Number 3C6TD5CT2CG248438, License Plate Number A366377.]

ALEXANDER explained that he intended to purchase this pickup from the GSA auction, so he listed Sandall as the point of contact (POC) for inquiries about the auction. ALEXANDER did this so he would not have to be the one fielding calls from potential buyers during the auction. ALEXANDER explained further that he had arranged for a two-day auction. Sandall agreed to be listed as the POC and assist ALEXANDER with the sale of the Dodge Ram. Sandall later accessed the GSA auction website and viewed the auction listing for the Dodge Ram (GSA Auction Sale-Lot No. 81QSCI18062001). Sandall immediately noticed that the vehicle description and pictures did not match the actual vehicle. The GSA auction website listed the Dodge Ram as having frame, engine, and motor damage and the pictures depicted a severely damaged Dodge Ram pickup truck. Sandall knew this was inaccurate because the Dodge Ram pickup at the storage facility was in visibly good condition. Sandall contacted ALEXANDER and asked him about the discrepancies. ALEXANDER told Sandall that he intentionally provided false information to Beatty in order to discourage other potential buyers from bidding on it. ALEXANDER told Sandall that he used pictures that he had saved from an old white Dodge Ram that had been previously wrecked. At this point, Sandall became concerned and told ALEXANDER that he would no longer assist with the GSA auction. Sometime later, ALEXANDER told Sandall that he had successfully obtained the vehicle.

9.     Sandall indicated that ALEXANDER had mentioned another official USDA-FS vehicle in the storage facility that he (ALEXANDER) was planning on taking and keeping for himself. This was a white 2008 Chevrolet Silverado 1500 pickup.

5

ALEXANDER stated he was going to get a blank Certificate to Obtain Title form so that he could get it registered at the Department of Motor Vehicles (DMV). [Agent's Note: The U.S. Government does not title vehicles, but instead uses a Certificate to Obtain Title form in order to transfer ownership of a vehicle outside of the government, such as when they auction a vehicle to the public. The Certificate to Obtain Title is the document that DMV requires in order for an individual to title a previously owned U.S. Government vehicle in their name. ALEXANDER did not provide Sandall with information on how he was going to get a blank Certificate to Obtain Title form.]

10.     Sandall provided information about a private boat that ALEXANDER had been keeping, without authorization, in the USDA-FS storage facility. Sandall stated that another USDA-FS employee who would know about this was Val Nelson, Ecologist, USDA-FS, Afton, Wyoming. Nelson recently contacted Sandall and told him that on February 23, 2018, he saw a Dodge Ram with government license plates on it hooked up to ALEXANDER's boat. The Dodge Ram and the boat were parked directly in front of the storage facility.

11.     On March 29, 2018, I spoke with Nelson. He confirmed that on February 23, 2018, at approximately 4:00 pm, he returned to the GSA storage facility in Ogden, Utah to pick up some equipment. As Nelson arrived, he observed a white Dodge crew cab pickup truck with government plates on it parked in front of the facility. The Dodge pickup was connected to a boat with an inboard motor and an expired boat registration. Nelson stated that he contacted Sandall and discussed this matter with him.

12.     On March 5, 2018, I received the files associated with the white 2012

Dodge Ram auction (Auction No. 81QSCI18062001) from SA Jeremy Sausto, GSA-OIG. The files referenced the Dodge Ram's VIN No. 3C6TD5CT2CG248438 and included the following records:

- Printout of the GSA Auction History: the printout showed the vehicle was a 2012 Dodge Ram 2500 ST, 4X4, 8 Cylinder Pickup Truck. The vehicle was described as inoperable with body, engine, and frame damage. The printout included pictures of a severely damaged white Dodge Ram pickup truck. The auction start date was reported as December 7, 2017 and the finish date was reported as December 9, 2017. The printout also showed that this particular GSA auction was won by Bidder #6 with a winning bid of $6,900.

- Standard Form 126 Report of Personal Property for Sale: this form was dated, November 29, 2017, and signed by ALEXANDER. The form listed the vehicle [VIN No. 3C6TD5CT2CG248438] as having body, engine, and frame damage, as well as scratches and dents. Section No. 12 listed Jim Sandall as the receiver for executed sales documents.

- Email from GSAAUCTIONS.ROCKYMOUNTAIN@GSA.GOV to Jennifer NIELSEN: this email, dated December 12, 2017, was titled "Purchaser's Receipt to Bidder for Sale/Lot 81QSCI18062/001". email confirmed the purchase of the 2012 2500 ST Dodge Ram, VIN No. 3C6TD5CT2CG248438 and provided the authority to release the property to the purchaser. The vehicle was described as an inoperable-tow away. ALEXANDER was listed as the owning agency POC. Bidder No. 999998, Jennifer NIELSEN, 2005 North 225 East, North Ogden, Utah

7

84414, Jennifern@founderstitle.com, was listed as the purchaser. [Agent's Note: ALEXANDER was subject of a previous, unrelated, USDA-OIG investigation. During the course of the aforementioned investigation, I learned that ALEXANDER and NIELSEN were in a relationship and that both resided at 2005 North 225 East, North Ogden, Utah 84414.]

- Standard Form 97-1 [The United States Government Certificate to Obtain Title to a Vehicle]: this form was signed by Beatty and dated December 9, 2017. The form listed NIELSEN at 2005 North 225 East, North Ogden, Utah 84414, as the transferee. The serial number D843010 was imprinted on the bottom left-hand corner of the form.

13. On March 2, 2018, Kelly Watson, R4-RO Fleet Manager, provided me with the transaction history of the GSA Wright Express (WEX) fuel card (ending in 12744), which was the fuel and maintenance credit card that was assigned to the Dodge Ram pickup. A review of these records showed that a transaction in the amount of $1610.57 posted on January 12, 2018. The transaction was conducted at Larry H. Miller Jeep/Chrysler Dealership, 1481 West Riverdale Road, Ogden, Utah.

14. On March 13, 2018, I received NIELSEN's GSA auction records from SA Sausto. The auction records showed that NIELSEN was the winner of the white 2012 Dodge Ram pickup (GSA auction 81QSCI18062). The records also showed that NIELSEN paid the winning bid price of $6900 with a VISA card (ending in 0960) on December 12, 2017.

15. On March 15, 2018, I was contacted by SA Tom Regennitter, USDA-OIG,

8

Salt Lake City, Utah. SA Regennitter provided the results of planned surveillance activities on ALEXANDER and NIELSEN's residence at 2005 North 225 East, North Ogden, Utah 84414. During the surveillance operation, SA Regennitter observed a white Dodge Ram (with no plates) connected to a boat in the driveway. The boat was white with a burgundy midsection and a gold trim. The vessel had the name "MAXUM" imprinted in gold, capitalized letters on the side. The number "1800 SR" was imprinted on the gold trim in black letters.

16.     On March 21, 2018, SA Sausto provided me with the results of planned surveillance activities on ALEXANDER and NIELSEN's residence at 2005 North 225 East, North Ogden, Utah 84414. During the surveillance operation, SA Sausto observed several vehicles parked on the property, including a red Mazda and a white Dodge Ram pickup. The white Dodge Ram 2500 pickup did not have license plates and was connected to a boat. SA Sausto indicated that another Dodge pickup, with the license plate D75 1YP, was also parked on the property. [Agent's Note: SA Sausto conducted additional record queries and learned that the Dodge pickup D75 1YP was registered to ALEXANDER.] SA Sausto provided pictures of both Dodge Ram pickups, the boat, other vehicles, and the residence.

17.     On March 21, 2018, SA Sausto interviewed Darren Erwin, Service Manager, Larry H. Miller Chrysler Dealership, 1481 West Riverdale Road, Ogden, Utah. Erwin provided SA Sausto with an invoice and other associated records for the January 12, 2018, repair on the 2012 Dodge Ram, VIN 3C6TD5CT2CG248438, for $1610.57 (referenced above). Erwin stated that someone named Rob ALEXANDER brought this

9

vehicle in for repair on December 11, 2017, and paid for the repair using GSA WEX card A366377. Erwin pointed out on the last page of the invoice where the service consultant took a picture of the GSA WEX card and wrote ALEXANDER's name as the person that brought the vehicle in. Erwin advised that the GSA WEX transaction records showed the repair date as January 12, 2018, because that was the date that the dealership was paid; however, the repair actually started on December 11, 2017, and was completed when the vehicle was picked up on December 15, 2017. Erwin said per ALEXANDER's request, the following repairs were completed: removed a spotlight, repaired a ticking noise in the exhaust manifold, replaced the brakes, resurfaced the brake rotors, did a fuel injection flush, performed a tune-up, changed the spark plugs and transmission fluid, and flushed the cooling system. The total cost of all of these repairs was $1610.57. [Agent's Note: GSA auction records, as stated above, showed that this vehicle was auctioned from December 7, 2017, to December 9, 2017, and that NIELSEN paid for it on December 12, 2017. This means ALEXANDER took this vehicle into the dealership, had it repaired and fixed up, and paid for it using government funds through the GSA WEX card after NIELSEN won it.]

18.     On March 22, 2018, SA Sausto obtained the contents of the garbage left outside of 2005 North 225 East, North Ogden, Utah 84414, for standard collection and disposal. The garbage contained multiple documents, including an urgent notice from Dominion Energy. The notice was dated January 2, 2018, and addressed to ALEXANDER at 2005 North 225 East, North Ogden, Utah 84414. The garbage also contained a Weber County Tax Notice for 2016, which listed ALEXANDER as the

property owner of 2005 North 225 East, North Ogden, Utah 84414. On March 22, 2018

SA Sausto also traveled to ALEXANDER's known place of work, the James V. Hansen

Federal Building at 324 25th Street, Ogden, Utah 84401. SA Sausto observed the Dodge

pickup, with the license plate D75 1YP, parked on a street near ALEXANDER's place of

work.

19.     On March 27, 2018, SA Sausto, interviewed Ernest Beatty, Equipment

Disposal Specialist, GSA. Beatty indicated that his duties included using the GSA

auction platform to auction government vehicles for federal agencies. According to

Beatty, the GSA auction process was as follows:

   a. Information for the vehicle is from the federal agency representative who
      requests the auction.

   b. The information is entered in the GSA auction database, which was referred
      to as the Sales Auto System (SASY). This action starts the auction file.

   c. After the highest bidder wins the vehicle, the sale is finalized in the SASY,
      and the Certificate to Obtain Title (SF-97) with the new owner's
      information is completed and mailed the completed SF-97 to the winning
      bidder.

20.     Beatty knew ALEXANDER and occasionally assisted him with the sale of

USDA-FS vehicles. In December 2017, ALEXANDER had Beatty sell four USDA-FS

vehicles. One of these vehicles was the white 2012 Dodge Ram 2500 pickup, VIN

3C6TD5CT2CG248438. ALEXANDER requested Beatty to expedite the sale of this

2012 Dodge Ram because he was going on vacation and wanted to have it sold before the

holidays. ALEXANDER therefore requested Beatty to make the auction open for only two days, which he said, in hindsight, was strange because auctions generally ran for seven days.

21.    ALEXANDER provided Beatty with the documentation necessary to auction the 2012 Dodge Ram, which included an SF-126 (Report of Personal Property For Sale) and an USDA-FS Checklist. Beatty indicated that the forms (SF-126 and Checklist) ALEXANDER sent to him conflicted with each other. Specifically, the information on the SF-126 listed the Dodge Ram as damaged, but the USDA-FS checklist did not. Beatty questioned ALEXANDER about the discrepancy and ALEXANDER indicated that it was simply a cut-and-paste error and told Beatty to ignore the checklist and use the SF-126, which showed the vehicle as being heavily damaged. Beatty mentioned that the pictures ALEXANDER provided also looked strange, but added that the pictures provided by agency representatives were often of poor quality.

22.    Beatty recalled receiving an email from NIELSEN, the winning bidder, confirming receipt of the 2012 Dodge Ram. He stated this was odd because he had always received this receipt from the agency representative who sold the vehicle and had never received this from the winning bidder before.

23.    Beatty explained that a Certificate to Obtain Title (SF-97) was the form he used to sell vehicles through the GSA auction platform. Beatty said after someone won a vehicle, he filled out a blank SF-97 with the seller's information, vehicle's description and purchaser's name. Beatty then signed the form and mailed it to the winning bidder. The winning bidder could then take the completed SF-97 to the DMV and have the

vehicle titled in their name. Beatty stated blank SF-97 forms were extremely sensitive and GSA logged them and kept close control of them because of this.

24.    Beatty was shown copies of the GSA auction records associated with the white 2012 Dodge Ram 2500 pickup, VIN 3C6TD5CT2CG248438; including the SF-97, SF-126, and the USDA-FS checklist. Beatty confirmed his signature on the SF-97 and confirmed that he had received the SF-126 and USDA-FS checklist from ALEXANDER.

25.    Beatty indicated that he had recently received a request from ALEXANDER for blank SF-97 forms. Beatty recalled that ALEXANDER said he needed them for a special project. Beatty stated that this was very odd and that he had never in his career received a request for blank SF-97s or sent blank SF 97s to another agency. He reiterated that these blank forms were sensitive documents and this was the only form that a State DMV needed in order for someone to transfer a government vehicle into their name.

26.    On April 3, 2018, I interviewed Kelly Watson, R4-RO Fleet Manager. Watson indicated that she was ALEXANDER's first-line supervisor. Watson stated that ALEXANDER was responsible for regional fleet oversight and acted as regional sales contact. According to Watson, ALEXANDER also oversaw the regional Federal Motor Vehicle Registration System (FMVRS). Watson stated that ALEXANDER had access to USDA-FS vehicles, license plates, GSA WEX fuel cards and regional licensing information. Watson indicated that ALEXANDER had received training in USDA ethics regulations and GSA WEX card/government vehicle usage policies. She said ALEXANDER had been allowed to work from home, on one occasion, sometime in

13

January of 2018. Watson stated that there had been an issue regarding ALEXANDER's misuse of the GSA-leased USDA-FS storage facility in the past. Watson explained that ALEXANDER had been keeping an unauthorized (private) boat in the GSA-leased storage facility and that he had been instructed to have it removed. [Agent's Note: The unauthorized storage of the boat was also discussed during the previous investigation, which was referenced above. USDA-FS-LEI Special Agents assisted the investigation by taking pictures of the boat, while it was parked in the storage facility. These pictures were provided to me. A review of the pictures revealed this was the same boat that was seen hooked up to the white 2012 Dodge Ram 2500 pickup, Vehicle Identification Number (VIN) 3C6TD5CT2CG248438, seen during surveillance multiple times in the driveway at 2005 North 225 East, North Ogden, Utah 84414.]

27.    Watson stated that USDA-FS regulations did not allow USDA-FS employees to participate in GSA auctions for government property, when the employees had non-public information about that property. Watson provided excerpts from USDA-FS Regulation AGPMR 110-38180 (Selling Federal personal property to USDA employees) and FS Regulation 7109.19 54. This restriction also applied to immediate members of the USDA-FS employee's household. [Agent's Note: The following sentence was taken directly from AGPMR 110-38.180 – "No purchase may be made by an employee who was accountable for the property, used the property, or who was in any way connected to its condemnation, declaration as excess, or sale."] Watson stated that ALEXANDER knew these regulations because he completed USDA-FS training.

28.    On April 4, 2018, I queried the [Utah] Weber County's Official Parcel

Search Database. The search term "2005 N 225 E" yielded the following information. ALEXANDER was listed as the property owner based on a Warranty Deed, recorded February 8, 2016.

29. On April 5, 2018, SA Sausto and I coordinated a consensually monitored telephone call from Ernest Beatty, Equipment Disposal Specialist, GSA, to ALEXANDER. During the call, Beatty followed-up on a previous request from ALEXANDER for blank SF-97s. Beatty explained to ALEXANDER that the SF-97 forms were sensitive documents and asked ALEXANDER why he needed them. ALEXANDER indicated that he needed them for the sale of ATVs. Beatty stated he could provide a couple of blank forms and ALEXANDER stated that was all he needed. Beatty confirmed that he would overnight a couple of blank SF-97s and requested that ALEXANDER confirm receipt. ALEXANDER agreed.

30. On April 5, 2018, I interviewed Kelly Watson, R4-RO Fleet Manager. She stated that her department did not have any special projects involving ATVs and no one in her department had any reason to request blank SF-97 forms.

31. On April 5, 2018, under the direction of SA Sausto, Ernest Beatty, Equipment Disposal Specialist, GSA, sent two blank SF-97 forms to ALEXANDER via the United Parcel Service (UPS). The SF-97 Serial Numbers were D843646 and D843647. On April 6, 2018, ALEXANDER sent an email to Beatty confirming receipt of these forms.

32. On April 11, 2018, SA Sausto and I conducted surveillance on the residence at 2005 North 225 East, North Ogden, Utah 84414. We both observed a white

Dodge Ram (with no plates) connected to a boat in the driveway. SA Sausto was able to visually inspect the vehicle's VIN as 3C6TD5CT2CG248438 and took a picture of it. SA Sausto and I also observed ALEXANDER standing on the back porch of the property.

33.    On April 11, 2018, SA Sausto and I coordinated a consensually audio-recorded face-to-face contact between James Sandall, Rocky Mountain Research Station Fleet Manager, and ALEXANDER. During the contact, ALEXANDER told Sandall that a USDA-FS vehicle (Chevrolet Silverado 1500, License No. A339003, Vehicle Identification Number (VIN) ending in 3542) currently parked in the storage facility, had been sold years ago, but the purchaser never picked up the vehicle. ALEXANDER told Sandall that the buyer had gone bankrupt and never received a refund of the purchase price. ALEXANDER told Sandall that he had started to fill out an SF-97, in order to officially return USDA-FS vehicle A339003 back to USDA-FS inventory. ALEXANDER also told Sandall that he had started to fill out an SF-97 for another USDA-FS vehicle (Jeep Liberty, License No. A342416, Vehicle Identification Number (VIN) ending in 8964), which was also parked in the storage facility. ALEXANDER did not provide any further details about USDA-FS vehicle A342416.

34.    On April 11, 2018, SA Sausto and I interviewed Kelly Watson, R4-RO Fleet Manager. Watson stated that she had no knowledge of ALEXANDER intending to transfer USDA-FS vehicle A339003 back to USDA-FS inventory. Watson also indicated that an SF-97 would not be necessary to do this and that this story did not make any sense to her. Watson added that tasks, such as filling out SF-97s, would not be within the scope of ALEXANDER's employment. She added that he did not even have the authority to

16

transfer vehicles to or from the government to individuals and that Beatty had to do this. Watson recalled that ALEXANDER had placed USDA-FS vehicle A339003 into sold status. Watson also recalled that she had been unable to locate any supporting documentation about the sale of this vehicle. [Agent's Note: Beatty informed SA Sausto during the interview referenced above that he had also not been able to locate any records regarding the sale of USDA-FS vehicle A339003].

35. Watson stated that ALEXANDER's work area was located on the 3rd Floor of the R4-RO. She said ALEXANDER's cubicle use to be in the work area directly adjacent to her own. Watson explained that ALEXANDER had recently been relocated to the other side of the 3rd Floor. She said ALEXANDER also maintained two locked cabinets and one locked key box. Watson emphasized that she did not have access to those containers and was not sure what ALEXANDER kept in them.

36. On March 22, 2018, GINA Freel, Regional Engineer, R4-RO, USDA-FS, Ogden contacted me. Freel is Watson's direct supervisor. Freel informed me that ALEXANDER had been relocated to her section on the 3rd floor. Freel provided pictures of ALEXANDER's new workspace.

37. On April 19, 2018, Kelly Watson, R4-RO Fleet Manager, provided a self-made sketch of ALEXANDER's work areas at the R4-RO. Watson's sketch showed the entire office layout of the 3rd floor and indicated where ALEXANDER's old and new work spaces were located.

## SEARCH OF COMPUTERS AND OTHER MEDIA

38.     I know computer hardware, software and other media may be important to a criminal investigation in two distinct ways: (1) the objects themselves may be contraband, evidence, instrumentalities, or fruits of crime, and/or (2) the objects may be used as storage devices that contain contraband, evidence, instrumentalities, or fruits of crime in the form of electronic, optical or magnetic data. I request permission to search and seize any computers, peripheral equipment, hardware, software, any type of electronic, magnetic or optical media, instruction manuals, system documentation, notes, or other type of correspondence relating to any computer or media device containing evidence of any crimes alleged in this affidavit.

39.     From my experience and training in fraud investigations I know individuals typically use computers and electronic media in the commission of the crimes being committed. It is common for individuals to use computers to connect to the internet as well as to create, save and edit emails, spreadsheets, word documents, databases, power points, and various other files for day-to-day activities. In this investigation, I know specifically that ALEXANDER and NIELSEN communicated with the GSA auction office via email in order to obtain the white 2012 Dodge Ram 2500, VIN 3C6TD5CT2CG248438. In addition, NIELSEN attached a signed "Purchaser's Receipt" to an email she sent to GSA for this vehicle, which means she most likely would have had this document saved on a computer or on other electronic media before she attached it to an email. I also know that ALEXANDER emailed pictures, forms, and checklists to GSA auctions, misrepresenting the 2012 Dodge Ram that was sold to NIELSEN in the

auction. These pictures also most likely had to be saved onto a computer or on other electronic media before they could have been attached to the email. Finally, NIELSEN and/or ALEXANDER would have had to use a computer or electronic device in order to access the GSA auction website in order to bid on the 2012 Dodge Ram that NIELSEN won.

## NECESSITY TO SEARCH & SEIZE COMPUTERS AND OTHER MEDIA

40.     I request permission to search and seize any computers and/or any devices potentially capable of creating, storing, displaying, analyzing, converting, transmitting, receiving, and/or deleting electronic, magnetic or optical computer impulses or data that is found at the search warrant site. I know from my training and experience and from conferring with computer forensic specialists that electronic, magnetic or optical data are typically stored on many devices to include, but not limited to hard drives, CDs, DVDs, tapes, floppy disks, Universal Serial Bus (USB) drives, cameras, MP3 players, Personal Digital Assistants (PDA), iPhones, iPods, cell phones, Blackberries, gaming systems, or memory cards. There are a variety of media devices available to the general public designed to creatively conceal the storage of data and have the potential to be utilized by an offender to store illicit materials to include, but not limited to pens, watches, key chains, necklaces, rings, bracelets, knives, toys, wine corks, clothing, and shoes. These unique items normally have some type of computer interface connection on them such as a USB, fire-wire and/or wireless network card that allows them to connect to a computer or computer-related device for data transfer. There has been a recent proliferation of

media devices because technological advances allowed manufacturers to greatly reduce the cost and size of these devices, while increasing storage capacity. This reduction in physical size and increase in storage capacity greatly enhances an offender's ability to conceal data. Because of the reduction in physical size, evidence could be in many places and locations not normally considered during a search warrant. A standard solid-state memory card, manufactured by a variety of companies used in a multitude of devices, is roughly the size of a standard postage stamp, with the ability to store 16 gigabytes. This is the equivalent of approximately 16,000 books or over 4,000,000 printed pages. As a result, the search team must search small areas and containers at the search warrant site.

## NECESSITY TO REMOVE COMPUTERS ANDOTHER MEDIA FROM SEARCH WARRANT SITE

41.     I know from my training and experience and from conferring with computer forensic specialists that conducting an image and search of a computer and/or other media, documenting the process, and making evidentiary, backup and archival copies is a lengthy process. First, it is necessary to determine no security devices are in place to cause destruction of evidence during the imaging or search. Sometimes a computer forensics specialist needs to seek additional technical expertise to image and search the computer or other media in a forensically sound manner. Computers and other media are extremely vulnerable to accidental and/or deliberate destruction or alteration through error, tampering, electrical outages, magnets, external signals, frequencies and various other causes. Computers and other media devices usually contain large volumes

of data that takes considerable time to image and search. Due to the volume, complexity, security, and vulnerability of this data, these devices may need to be removed from the premises to retrieve data. Computers and other media used are themselves instrumentalities or fruits of crime may need to be kept as original evidence.

42.     The accompanying software programs also need to be seized because data created with certain software can be proprietary, meaning the data can only be interpreted by that software and is sometimes impossible to examine otherwise. Examination of this data is necessary to determine if it contains information pursuant to the "items to be seized" section of this affidavit. Instruction manuals, system documentation, notes, or other types of correspondence relating to computer or media device will need to be seized because it could contain passwords, usernames, instructions, hints, codes, keywords, etc., necessary to operate and interpret the computers or media examined.

43.     I know from my training and experience and from conferring with computer forensic specialists that conducting a thorough search of computers and other media can be extremely time consuming. Examinations can take weeks, months or even years to complete when analyzing large amounts of data. This is true because of the following:

    a.     The volume of evidence:  Computers and media devices (such as hard drives, CDs, DVDs, tapes, floppy disks, USB drives, cameras, MP3 players, PDAs, iPhones, iPods, cell-phones, Blackberries, gaming systems, and memory cards) can store the equivalent of millions of pages of information. An offender may seek to conceal electronic, optical or magnetic data by storing it in random

21

order, using deceptive file names, erasing it, storing it in unallocated space that the operating system does not recognize, using encryption, password protection or compression, or hiding the data in other files. An in-depth examination of just one computer or device can take forensic specialists a large amount of time. It would be impractical and invasive to attempt this kind of search onsite.

      b.    <u>Technical standards and requirements:</u>  Analyzing computers and other media for evidence is a highly technical process requiring expert skill and a properly controlled environment. The vast array of computer systems available requires even computer experts to specialize in certain systems and applications. It also means that computer forensic specialists have to sometimes contact other specialists or technical representatives for assistance, which takes time.

      c.    <u>Variety of Forms of Media:</u>  It is difficult to know prior to the search which computer forensic specialist possesses sufficient skills to best analyze any given computer or media device. Data analysis protocols are exacting scientific procedures that are designed to protect the integrity of the data and recover potential evidence in a forensically sound manner. Additionally, due to the large variety of media storage devices from potentially hundreds of different manufacturers, computer forensic specialists will have no way of knowing which equipment to bring to properly image all of the media at the search warrant site. A controlled environment is therefore essential to complete the imaging and examining process of the computers and all other media.

      d.    <u>Necessity to search all data on computers and other media:</u>

Searching for a particular piece of evidence can be a painstaking and complicated process. A suspect may try to conceal criminal evidence by storing it in random order and/or with deceptive file names. For example, a document created for the purpose of perpetrating fraud will not likely be labeled "Fraud.doc," but rather will likely be labeled something less conspicuous by its creator to avoid detection. File extensions (such as ".doc" in the previous example – connoting that it is a Microsoft Word file or ".jpg," which signifies that it is a picture file) can be intentionally altered to look like another type of file. A child pornography image could be initially saved on a computer as kiddieporn.jpg, but later deceptively renamed to sundayschoollesson.doc by its creator. Sometimes each file will need to be opened up and examine. Offenders can conceal evidence by encrypting data, password protection and/or using code words to discuss a fraudulent transaction. Documents can be scanned into a computer file in various formats. These files need to be individually opened for examination. Offenders can save and conceal data on their computers or other media devices and that is why a full examination of these devices takes a considerable amount of time and would be impractical to do on the search warrant site.

44.	I request the Court's permission to search and seize any computers, peripheral equipment, hardware, software, any type of electronic, magnetic or optical media, instruction manuals, system documentation, notes, or any other type of correspondence potentially relating to any computer or media device located at the aforementioned location to be searched.

45. Based on the foregoing, I respectfully submit that there is probable cause to believe that ROBERT ALEXANDER has committed a violation of federal law, specifically Theft of Government Property (18 U.S.C. § 641), Mail Fraud (18 U.S.C. § 1341), Wire Fraud (18 U.S.C. § 1343), and Conspiracy (18 U.S.C. § 371). I also submit that there is probable cause to believe that evidence, instrumentalities, and fruits of the aforementioned violations are presently located at the James V. Hansen Federal Building, 324 25th Street, 3rd Floor, Ogden, Utah 84401. I therefore request that this Court authorize a warrant to search the property more fully described in Attachment A to this Affidavit and authorize the search and seizure of the items specified in Attachment B to this Affidavit.

DATED this 25th day of April, 2018.

KEVIN WATTS, Special Agent
Office of the Inspector General, United States
Department of Agriculture


SUBSCRIBED to and SWORN before me this 25th day of April, 2018.

EVELYN J. FURSE,   *Brooke C. Wells*
United States Magistrate Judge
District of Utah

24

ATTACHMENT A
DESCRIPTION OF PROPERTY TO BE SEARCHED

1.     The James V. Hansen Federal Building, United States Department of

Agriculture, Forest Service Region 4 Regional Office, located on 324 25th Street,

Ogden, Utah 84401. Specifically, all work areas, locked and unlocked containers,

and files accessible by ROBERT ALEXANDER on the 3rd floor of the building.



2.     ROBERT ALEXANDER's person and immediately accessible personal

effects.

3.     Dodge Pickup, License Plate Number. D75 1YP

ATTACHMENT B
DESCRIPTION OF ITEMS TO BE SEARCHED AND SEIZED:

1.     GSA Government License Plates: A366377; GSA Wright Express Fuel Card A366377 (ending in 12744); Vehicle Keys Associated with the 2012 Dodge Ram: VIN NO. 3C6TD5CT2CG248438; Standard Form 97-1 (The United States Government Certificate to Obtain Title to a Vehicle) Serial Number D843010;

2.     Invoices, receipts and quotes (associated with 2012 Dodge Ram, VIN No. 3C6TD5CT2CG248438) from Larry H. Miller Chrysler/Jeep Dealership, 1481 West Riverdale Road, Ogden, Utah.

3.     GSA Auction records pertaining to GSA Auction No. 81QSCI18062, Pictures of a damaged (white) 2012 Dodge Ram; GSA Auction payment receipts, GSA Auction notes; and GSA Auction account information.

4.     SF-97-1 (The United States Government Certificate to Obtain Title to a Vehicle) Forms: Serial Numbers D843646 and D843647.

5.     Computers (desktops and laptops), peripheral equipment, hardware, software, any type of electronic, magnetic or optical media, instruction manuals, system documentation, notes, or any other type of correspondence potentially relating to any computer or media device.